UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SANDMAN, INC., et al.,
Plaintiffs,
v.
SAN BENITO COUNTY, et al.,
Defendants.

Case No. 5:25-cv-02736-PCP

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 56

Plaintiffs Sandman Inc. (dba Star Concrete) and Sandman president and CEO Gerald Blatt own property on the San Benito riverbed. Plaintiffs allege that regulatory actions have unconstitutionally deprived them of the benefits of operating a sand and gravel quarry along the river. In this action, plaintiffs assert four claims under 42 U.S.C. § 1983 against San Benito County and various current and former officials thereof: two counts alleging Fifth Amendment Takings Clause violations, one count alleging a substantive due process violation, and one count alleging an Equal Protection Clause violation.

The Court granted defendants' previous motion to dismiss in part. *Sandman, Inc. v. San Benito Cnty.*, 793 F. Supp. 3d 1155, 1159 (N.D. Cal. 2025). Plaintiffs then filed an amended complaint, adding individual defendants San Benito County Director of Planning, Building & Code Enforcement Abraham Prado, former County Supervisor Bea Gonzalez, and current Supervisors Dom Zanger, Kollin Kosmicki, Mindy Sotelo, Anela Curro and Ignacio Velazquez ("Individual Defendants"). The causes of action and factual circumstances remain the same.[1] Defendants now move to dismiss the claims against the newly added individual defendants under

[1] The Court's previous order provides extensive background on both the facts and history of the case. *See id.* at 1159.

United States District Court
Northern District of California

United States District Court
Northern District of California

Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

The Federal Rules require a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint does not do so, the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Materials attached to the complaint may be considered on a Rule 12(b)(6) motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). A court need not accept as true allegations that contradict exhibits attached to and thus incorporated within the complaint. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ANALYSIS

Plaintiffs' amended complaint names seven additional individual defendants—Prado, Gonzales, Zanger, Kosmicki, Sotelo, Velazquez, and Curro—alleging that they participated in a decades-long strategy to unconstitutionally prevent plaintiffs from exercising their vested property rights.[2] Plaintiffs' theory of liability as to the named defendants is premised on supervisory liability. Under § 1983, a supervisor may be liable if there exists either personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the underlying violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). There is no *respondeat superior* liability under section 1983—only direct liability where a supervisor either participated in or proximately caused a constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Supervisory status is insufficient on its own to establish liability." *Hall v. Maioho-Pohina*, No. 22-15698, 2023 WL 3220909, at *3 (9th Cir. May 3, 2023) (citing *Iqbal*, 556 U.S. at 677).

Plaintiffs point to two events to support their claims. First, they argue that defendants "continually endorsed a plan" for a county agency "to both obtain property for the River Parkway as inexpensively as possible while also providing an allegedly fair and impartial review" of plaintiffs' proposed reclamation plans "which, if approved, would make the property prohibitively expensive for the County to acquire." Second, they argue that the defendants' "treatment of" a letter dated April 24, 2023, evidenced "deliberate indifference toward a known constitutional violation." Plaintiffs' theory is that, taken together, these acts create supervisory liability for defendants' ongoing "strategy" to deprive plaintiffs of their vested property rights in violation of the Fifth and Fourteenth Amendments.

### I. Defendant Prado

Defendant Prado is the only newly named individual defendant who is not alleged to be on the Board of Supervisors. Nor is his role defined anywhere in the FAC beyond being "a local government official with administrative discretion and decision-making authority" who is

[2] For the purposes of defendants' motion, the Court assumes the truth of the allegations in plaintiffs' complaint and the exhibits thereto.

United States District Court
Northern District of California

"employed by San Benito County." "[C]ourts have found that a theory of supervisory liability cannot be asserted where a plaintiff fails to allege facts to show that a defendant is a supervisor." *Eteghaei v. Cnty. of Alameda*, No. 22-CV-04298-KAW, 2023 WL 4297587, at *5 (N.D. Cal. June 29, 2023) (citing *Cesario v. Medina*, No. 2:19-02921 JAK (ADS), 2022 WL 3636685, at *6 (C.D. Cal. July 29, 2022)). Because plaintiffs have alleged no facts sufficient to support supervisory liability against Prado, the claims against him are dismissed.

## II. The Board of Supervisors

Plaintiffs next assert supervisory liability against current and former members of the Board of Supervisors. The relevant allegations against them are as follows: Defendants were copied on an April 24, 2023, letter from plaintiffs to defendant Goodspeed commenting on the County's environmental impact report for the mine and requesting more clarification from the County about its position on the scope of the vested right in the mine. Plaintiffs argue that each member of the Board of Supervisors was therefore either aware of or deliberately indifferent to the allegations of constitutional deprivations in the letter. Additionally, plaintiffs contend that all "[d]efendants … knew" that the County wanted to build a parkway running along the San Benito River and that Sandman's mine is located in the heart of the proposed parkway. Defendants "also knew that Sandman was unaware" that the County never planned to approve an amended reclamation plan. Finally, Defendants Prado and the Board of Supervisors were aware that the agency tasked with reviewing plaintiffs' amended plans was also simultaneously working on the parkway plan, creating an alleged conflict of interest. According to plaintiffs, defendants thus participated in a "strategy" to "prevent Sandman from ever again mining the property."

These allegations do not support plaintiffs' theory of supervisory liability. First, the letter does not establish that the Supervisors took any sort of action that could give rise to liability. Instead, it outlines the history of the dispute, challenges the environmental impact report, and requests that the Board of Supervisors be "the ultimate administrative decision-maker on the question of Sandman's vested rights."[3] Even if the Court accepted the allegation that the letter

[3] The Court takes judicial notice of the April 24, 2023, letter. *Ritchie*, 342 F.3d at 908.

outlined constitutional violations by the County, there is nothing within that suggests that the board members directly participated in any of the violations. When a plaintiff relies on a causal connection theory, he must show that the supervisor "set in motion a series of acts by others, or knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (citation omitted). But where a supervisor's only connection to a claim is the receipt of a letter outlining the violation, "[t]he overwhelming majority of courts in this Circuit have repeatedly found [that the fact that a plaintiff sent such a letter] does not adequately allege … the personal involvement of the defendant in any constitutional violations that may have been addressed in the letter." *Muhammad v. California*, No. CV 18-4017 JAK (PVC), 2020 WL 9848693, at *19 (C.D. Cal. Oct. 8, 2020), report and recommendation adopted as modified, No. LA CV18-04017 JAK (PVCX), 2023 WL 11909758 (C.D. Cal. Oct. 23, 2023) (emphasis omitted); *see also Goldstein v. Barajas*, No. 19-CV-00555-HSG, 2019 WL 3323105, at *2 (N.D. Cal. July 24, 2019) ("[A] supervisor's failure to respond to notices (letters, complaints) regarding constitutional violations previously committed by an employee does not establish § 1983 liability for the past constitutional violations. In other words, a supervisor is not liable for a constitutional violation that she or he did not know would occur."). Because Section 1983 actions do not allow for *respondeat superior* liability, such a broad theory of liability would be inconsistent with the statute. *Muhammad*, 2020 WL 9848693, at *18 (citing *Crowder v. Lash*, 687 F.2d 996, 1005–06 (7th Cir. 1982)).

Next, plaintiffs allege that defendants are liable for allowing an agency to oversee the park plan while also processing Sandman's proposed mine, creating a conflict of interest. But alleging that defendants allowed an agency to both implement the park plan and supervise the quarry under California's Surface Mining and Reclamation Act is not sufficient to show supervisory liability, or even that there was a conflict of interest in the first place. Further, plaintiffs do not allege that the same person—or even same department—worked on both issues.

Plaintiffs fail to demonstrate that any member of the Board of Supervisors is liable for the alleged constitutional violations. The claims against them are therefore dismissed.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is GRANTED. The decision to grant leave to amend is within the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). Because this is plaintiffs' second attempt to plead their action, and because the Court has already ruled on the previous complaint, dismissal is without further leave to amend and with prejudice. The remaining claims may proceed.

**IT IS SO ORDERED.**

Dated: July 22, 2026

P. Casey Pitts
United States District Judge