G. DAVID ROBERTSON, ESQ. (CA Bar No. 111984)
ANTHONY G. ARGER, ESQ. (CA Bar No. 304483)
BRIANA N. COLLINGS, ESQ. (CA Bar No. 317678)
ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone No.: (775) 329-5600
Facsimile No.: (775) 348-8300
gdavid@nvlawyers.com
anthony@nvlawyers.com
briana@nvlawyers.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

SANDMAN INC., dba STAR CONCRETE, a California corporation, and GERALD R. BLATT, an individual,

Plaintiffs,

vs.

COUNTY OF SAN BENITO, a political subdivision of the State of California; ROB MENDIOLA, in his official capacity with the County of San Benito and individual capacity; MARY PAXTON, in her official capacity with the County of San Benito and individual capacity; TAVEN BROWN, in his official capacity with the County of San Benito and individual capacity; ARIELLE GOODSPEED, in her official capacity with the County of San Benito and individual capacity; ABRAHAM PRADO, in his official capacity with the County of San Benito and individual capacity; DOM ZANGER, in his official capacity with the County of San Benito and individual capacity; KOLLIN KOSMICKI, in his official capacity with the County of San Benito and individual capacity; MINDY SOTELO, in her official capacity with the County of San Benito and individual capacity; ANGELA CURRO, in her official capacity with the County of San Benito and individual capacity; IGNACIO VELAZQUEZ, in his official capacity with the County of San Benito and individual capacity; BEA GONZALEZ, in her official capacity with the County of San Benito and individual capacity; and DOES I through X,

Defendants.

Case No.: 5:25-cv-02736-PCP

**JOINT STATEMENT RE DISCOVERY DISPUTE: DEFENDANT COUNTY OF SAN BENITO'S AND NON-PARTY, BENCHMARK LAND USE GROUP, INC. dba BENCHMARK RESOURCES' PRIVILEGE CLAIMS & LOGS**

Dept.: 8

Judge: Hon. P. Casey Pitts

Magistrate Judge: Hon. Susan van Keulen

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

A discovery dispute has arisen between the parties which has not been resolved through the good faith meet-and-confer process, thus necessitating this Court's consideration and resolution. The current fact discovery cut-off is March 31, 2027 (126 days from this filing). No trial date has been set. This dispute arises from Defendant County of San Benito and its third-party engineering consultant Benchmark Resources asserting various privileges to withhold their communications. Benchmark provided engineering services relating to Plaintiff Sandman, Inc.'s various reclamation plan amendment submittals and related environmental impact reports, which services were paid for by Sandman.

As a proposed compromise, the County and Benchmark have agreed to serve revised privilege logs that include the information required by Section 7(c), (d), and (e) of this Court's Civil and Discovery Referral Matters Standing Order, except to the extent that providing such information would disclose privileged or protected content.

Sandman believes this proposed compromise is quite unrealistic because of the pending discovery cut-off. Indeed, if there are continued disputes over the withheld documents, which Sandman anticipates, there simply will not be enough time to resolve said disputes and still conduct the anticipated 25+ depositions needed prior to March 31, 2027. Further, Sandman does not believe another round of revisions to the privilege logs will resolve the incorrect privilege assertions. Sandman instead proposes the County and Benchmark produce their withheld documents and redact only genuine legal advice being sought or provided, leaving all other information visible, and justify the redactions in the proposed revised log.

### II. SANDMAN'S POSITION

#### A. <u>There Is No Privilege Between the County and Benchmark</u>

A party responding to discovery requests may assert privileges and withhold documents that are otherwise responsive by providing a privilege log. FRCP 26(b)(5)(A), 34(b)(2)(C). The party asserting the privilege carries the burden of proving the privilege is appropriate, with specificity. <u>See</u> <u>Eastman v. Thompson</u>, 636 F. Supp.3d 1078, 1083 (C.D. Cal. 2022).

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

The County's and Benchmark's privilege logs indicate that they have together withheld over 800 documents based upon the attorney-client privilege, the work product doctrine, and the deliberative process privilege. (See Ex. 2, Benchmark's Priv. Log; Ex. 3, County's 1/2/26 Priv. Log; Ex. 4, County's 7/20/26 Priv. Log.) Yet, none of these three (3) asserted privileges apply to the withheld communications between the County and Benchmark, and the County and Benchmark have not met their burden to show that these privileges do apply—nor can they.

***i. Attorney-client privilege***

The party asserting the attorney-client privilege "has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." Greer v. Cnty. of San Diego, 127 F.4th 1216, 1224 (9th Cir. 2025) (cleaned up). The Ninth Circuit's eight-part test must be met: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." Id. at 1224 (citation and quotations omitted). The privilege is to be "strictly confined within the narrowest possible limits." U.S. v. Christensen, 828 F.3d 763, 803 (9th Cir. 2015). The County's and Benchmark's assertions of attorney-client privilege do not meet these standards.

To begin, an attorney's mere presence on a communication is insufficient—the privilege applies only when the communication is made for the specific purpose of acquiring legal advice from an attorney. U.S. v. Martin, 278 F.3d 988, 999, 1000 (9th Cir. 2002). Thus, "[t]he mere fact that . . . counsel was copied with [an] email will not shield communications not made for the purpose of securing legal advice." In re Facebook, Inc. Consumer Priv. User Profile Litig., No. 3:18-MD-02843-VC-JSC, 2022 WL 18862877, at *3 (N.D. Cal. June 24, 2022) (citation and quotations omitted). Accordingly, the mere inclusion of County counsel as tertiary recipients of the communications at issue does not render them privileged. To the contrary, the fact that counsel "is merely CC'd on emails, suggests the possibility that the emails . . . do not involve the communication or solicitation of legal advice." Engurasoff v. Zayo Grp. LLC, No. C-14-00689 DMR, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015). (See Ex. 1 at Nos. 1 and 2.)

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

The County and Benchmark argue these emails are actually the latest on an email chain where County counsel was an active participant, yet that is not what the privilege logs indicate. Indeed, the purpose of a privilege log is to allow the non-withholding party to assess the privilege claim. Rodriguez v. Seabreeze Jetlev LLC, 620 F.Supp.3d 1009, 1023-24 (N.D. Cal. 2022). By omitting this alleged information from the log, the County and Benchmark have not met their burden to affirmatively show the asserted privilege is appropriate. And, where the County and Benchmark have now revised their privilege logs three times, the Court should find their opportunity to justify the privilege in their logs has long since passed. Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149-50 (9th Cir. 2005); RG Abrams Ins. V. Law Offices of C.R. Abrams, 342 F.R.D. 461, 527-28 (C.D. Cal. 2022).

Additionally, where communications may be taking place for dual purposes, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or [other non-legal] advice." In re Grand Jury, 23 F.4th 1088, 1091 (9th Cir. 2021). "Where there was a clear business purpose in the environment in which the communications occurred," the withholding party must establish that "*each* communication in question was made *primarily* for the purpose of generating legal advice." In re California Bail Bond Antitrust Litig., 778 F.Supp.3d 1051, 1057 (N.D. Cal. 2025) (internal quotations omitted).

Here, the County and Benchmark are engaged in the business of reviewing, analyzing, assessing, and ultimately approving or denying Sandman's reclamation plan submittals and any further reports related thereto. Cal. Pub. Res. §2772, *et seq.* Thus, any communications relating to these tasks between the County and an engineering firm consultant have a primary purpose of effecting the County's business as a lead agency, not seeking nor rendering legal advice. Indeed, since Benchmark is acting only as an engineering consultant, that they would be sharing legal advice with the County defies logic. And, where the County and Benchmark have added a perfunctory "seeking legal advice" or "gathering information for legal services," without any further information (i.e., the topic of legal advice or services), they cannot meet their high burden to curtail Sandman's ability to engage in fact finding. Also, importantly, the privilege does not protect purely factual information—which is the only type of information Benchmark would

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

likely be providing to the County given its role as an engineering consultant, and not a law firm. See Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981). (See Ex. 1 at Nos. 3 and 4.)

***ii. The attorney-work product doctrine has no basis here***

The County and Benchmark also rely on the attorney-work product doctrine as grounds for their production refusals. However, this doctrine is also inapplicable. The attorney-work product doctrine protects ***only materials prepared in anticipation of litigation***. Anderson v. SeaWorld Parks & Ent., Inc., 329 F.R.D. 628, 635 (N.D. Cal. 2019). "Nor is an attorney's own work subject to protection if the work is intended for public relations *or other business purposes* rather than litigation; . . . ." Id. (emphasis added). Furthermore, only when documents "would not have been created in substantially similar form but for the prospect of [certain, anticipated] litigation," can they be shielded from production by this doctrine. In re Grand Jury Subpoena (Mark Torf/Torf Env. Mgmt.), 357 F.3d 900, 908 (9th Cir. 2004).

Though Sandman maintains that the County never intended to allow Sandman to resume its mining operations, Benchmark's involvement and role is alleged by the County to be for a non-litigation purpose, i.e., performing engineering analysis of Sandman's proposed amended reclamation plans and an EIR. Indeed, that is exactly why the County required Sandman to pay for Benchmark's services—not to assist the County in preparing for anticipated litigation. Accordingly, it is illogical to argue that those documents withheld in reliance on this doctrine were created by the County or Benchmark in anticipation of litigation, rather than for the purported purpose for which Benchmark's services were engaged. (See Ex. 1 at Nos. 5 and 6.)

The County and Benchmark also argue that a long-dead Superior Court case filed between Sandman and the County in the mid-1990s creates a reasonable anticipation of litigation 25 years later. That argument is nonsensical. The Superior Court case they refer to has been closed since the 2001 remand of the dispute back to the County's administrative quagmire. (Dkt. 28 at 19:13-25:13.) It is patently unreasonable for the County or Benchmark to claim such a cadaverous case now justifies their overzealous assertion of the work product doctrine 25 years later. See, e.g., Cung Le v. Zuffa LLC, 321 F.R.D. 636, 647-49 (D. Nev. 2017) (nearly identical litigation tangentially involving defendant did not create a reasonable anticipation of litigation).

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

***iii. The deliberative process privilege is inapplicable here***

Finally, the County and Benchmark cannot avail themselves of the deliberative process privilege. The privilege's applicability is triggered only when a document is: (1) "predecisional" and (2) "deliberative in nature, containing opinions, recommendations, or advice about agency policies." F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). When it comes to asserting this privilege over communications with third-party consultants, the communications must have been made solely in the government's interests. Where another party has a stake in the matter, issue, or work performed by the consultant, the deliberative process privilege cannot be invoked. See e.g., Friends of the Earth v. U.S. Army Corps of Eng'rs, 374 F. Supp. 3d 1045, 1053 (W.D. Wash. 2019).

Here, Benchmark also represents Graniterock Company—Sandman's direct competitor in San Benito County. Thus, Benchmark's involvement here clearly implicates *both* Sandman and Graniterock's rights as alleged in the First Amended Complaint. (See Dkt. 52 at ¶118, 195, 305, 307-08.) Benchmark's conflict of interest in representing Sandman's competitor while allegedly assisting the County in assessing Sandman's efforts to resume mining renders the deliberative process inapplicable. Friends of the Earth, 374 F. Supp. 3d at 1053. (See Ex. 1 at Nos. 7 and 8.)

Most importantly, however, the deliberative process privilege is less available to the government when the governmental decision-making process is central to the case—such as in an equal protection "class of one" claim. N. Pacific, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1124 (N.D. Cal. 2003). Here, Sandman has brought such a claim, and the County's intent is at issue. (Dkt. 52 at 55-58.) The privilege is therefore inapplicable here and does not provide the County and/or Benchmark with a valid basis to withhold relevant and responsive documents.

**C. The Privilege Logs Lack the Necessary Specificity**

In addition to the above issues, a significant number of the document descriptions provided in the privilege logs are insufficient under FRCP 26. The County and Benchmark are obligated to "produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified." Rodriguez, 620 F.Supp.3d at 1023. The County's and Benchmark's document descriptions resemble those courts consistently reject as facially

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

inadequate. See, e.g., Saud v. State of California, No. 2:14-CV-2536-GEB-AC, 2016 WL 2927591, at *3-*4 (E.D. Cal. May 19, 2016) (document descriptions such as "Email: Confidential issue" and "PS federal court complaint" were "too brief to permit determination whether they involve legal advice" and failed to facially demonstrate attorney-client privilege).

Indeed, this Court's standing order requires the logs to contain "d. the title and description of the document; e. The subject matter addressed in the document; f. The purpose(s) for which it was prepared or communicated; [and] g. The specific basis for the claim that is privileged." See Civil and Discovery Referral Matters Standing Order Magistrate Judge Susan Van Keulen (Updated February 2026), at § 7(c).

The County and Benchmark's privilege logs, even after 3 amendments, fail to establish the privileges alleged, and thus those documents must be produced. (See generally, Ex. 1.)

## III. DEFENDANTS' AND BENCHMARK'S POSITION

### A. Privilege Is Not Waived by Benchmark's Inclusion in Communications

The attorney-client privilege reaches "communications with third parties who have been engaged to assist the attorney in providing legal advice." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). It also extends to "independent contractors and other third parties who are functional equivalents of employees." Memry Corp. v. Ky. Oil Tech., N.V., No. C04-03843 RMW (HRL), 2007 WL 39373, at *2 (N.D. Cal. Jan. 4, 2007). In United States v. Graf, 610 F.3d 1148 (9th Cir. 2010) adopted this functional employee doctrine, recognizing that corporate attorneys must be able to communicate confidentially with individuals who possess information necessary to provide legal advice, even when they are not formally employed by the corporation. Id. at 1158-1159. Nonemployees with "a significant relationship to the [client] and the [client's] involvement in the transaction that is the subject of legal services" hold the same information counsel needs from employees. In re Bieter Co., 16 F.3d 929, 937-38 (8th Cir. 1994).

The County retained Benchmark under the County's own contract, and Benchmark worked at the direction of County staff and County Counsel. Benchmark's Bob Delp served as the County's project planner and environmental consultant for the Nash Road Quarry project at issue in this litigation, and was the County's principal point of contact with counsel on the

reclamation plan amendments and the related environmental review. Delp performed the work County planning staff would otherwise perform, and counsel required his information and expertise to advise the County.

Sandman's reimbursement of Benchmark's fees does not alter this analysis. CEQA authorizes a lead agency to recover its environmental review costs from the applicant. Cal. Pub. Res. Code § 21089(a). The lead agency may contract for preparation of an EIR, and the document must reflect the agency's independent judgment. CEQA Guidelines § 15084(d)(3), (e). Benchmark answered to the County. Payment of a statutory fee gave Sandman no client relationship with Benchmark and no claim to the County's confidential communications.

### B. The Attorney-Client Privilege Protects the Withheld Communications

The attorney-client privilege protects "the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390–91 (1981). Entries titled "County attorney review" and described as "gathering information for legal services" reflect information that counsel requested or received in order to advise the County. The privilege also covers communications among non-lawyers that "discuss or transmit legal advice given by counsel," and "internal communications that reflect matters about which the client intends to seek legal advice." United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); Dolby Labs. Licensing Corp. v. Adobe Inc., 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019). The withheld communications between non-attorney employees discuss attorney provided advice, requests by counsel for information, or an intent to seek legal advice.

Sandman overstates its authorities. Engurasoff v. Zayo Grp. LLC, 2015 WL 335793, at *3, and In re Facebook, Inc. Consumer Priv. User Profile Litig., 2022 WL 18862877, at *3, hold only that copying counsel on an email does not by itself **create** a privilege. However, the withheld documents on which an attorney is copied here include communications in which counsel requested the review or rendered the advice. And many of these communications are the last email in a long chain of emails where the sender, primary recipient, and copied recipients repeatedly alternate between attorneys and non-attorneys, as reflected in the privilege logs.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

Communications serving both legal and nonlegal purposes remain privileged when their primary purpose is to obtain or provide legal advice. In re Grand Jury, 23 F.4th 1088, 1094 (9th Cir. 2021). Legal advice is not limited to litigation strategy, and also includes interpreting legal requirements, evaluating compliance and advising clients about avoiding future liability. United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996); Greer v. County of San Diego, 127 F.4th 1216, 1225-26 (9th Cir. 2025). In Greer, the Ninth Circuit held that a county agency's communication with counsel concerning investigations and corrective measures were privileged because their primary purpose was to obtain legal advice concerning existing and potential liability. 127 F.4th at 1225-26. The court rejected the premise that advice loses its legal character merely because it also informs operational improvements or measures intended to prevent future violations. Id. As the court recognized, legal advice encompasses the application of legal principles to evaluate past conduct and to guide future conduct. Id. at 1226.

Greer's reasoning applies to County Counsel's communications concerning Surface Mining and Reclamation Act enforcement, reclamation plan review and the CEQA process. These activities require the County to interpret and apply statutory and regulatory requirements, determine legal sufficiency of proposed actions and documents, evaluate enforcement authority, and ensure compliance with procedural and substantive obligations. County counsel's advice concerning these matters is legal advice, even if it necessarily involves regulatory administration and policy considerations. See Greer, 127 F.4th at 1225-26; Chen, 99 F.3d at 1501.

**C. The Work-Product Doctrine Applies**

Work-product protection extends to materials prepared by a party's "consultant . . . or agent." Fed. R. Civ. P. 26(b)(3)(A); United States v. Nobles, 422 U.S. 225, 238–39 (1975). A document is protected if it "can be fairly said to have been prepared or obtained because of the prospect of litigation." Richey, 632 F.3d at 567–68. Dual-purpose documents are protected where the litigation purpose permeates them. In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900, 907–10 (9th Cir. 2004). Protection also carries across related litigation between the same parties. FTC v. Grolier Inc., 462 U.S. 19, 25 (1983).

In November 1995, Sandman sued the County in San Benito Superior Court (Case No.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

22107) challenging the County's determination of its vested rights at the Nash Road Quarry, and that case remains ongoing. In 1999, the court bifurcated Sandman's mandamus claim from its damages and equitable claims. After ruling on the writ in 2000 and 2001, the court directed further administrative proceedings on Sandman's reclamation plan before litigation of the remaining claims. Given the parties' decades-long adversarial relationship and the pendency of Case No. 22107, the withheld documents were prepared in light of both ongoing and reasonably anticipated litigation. Counsel's assessments of compliance with the state court's rulings, legal review of draft determinations Sandman was expected to challenge, and counsel-directed factual investigation would not have been created in substantially similar form absent that litigation. Torf, 357 F.3d at 908. The County has not withheld as work product routine administrative communications that would have existed regardless.

### D. The Deliberative Process Privilege Applies

The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental **decisions and policies** are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975); Karnoski v. Trump, 926 F.3d 1180, 1203–04 (9th Cir. 2019). It "protects deliberations regarding any act, not just legislative acts" and "the deliberations need not concern policy matters for the privilege to apply." Fabbrini v. City of Dunsmuir, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). Factual material is protected where its disclosure "would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency." Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988).

Consultant records that "played essentially the same part in an agency's deliberative process as documents prepared by agency personnel" are protected where "the consultant does not represent its own interest, or the interest of any other client, when it advises the agency that hires it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 10–11 (2001). Here, the County retained Benchmark and directed its work, and Benchmark did not represent its own interests or another client in relation to Nash Road Quarry. Work on Graniterock projects is not relevant. Sandman cites Friends of the Earth v. U.S. Army Corps of Engineers, 374 F.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

Supp. 3d 1045, 1053 (W.D. Wash. 2019) for the proposition that the privilege is unavailable wherever "another party has a stake in the matter." The court's actual reasoning turned on the consultant being retained by, and potentially representing, the interested party. Id. at 1053. Under Sandman's reading, no permit-related deliberation could ever be protected, because every permit affects its applicant. Nor does simply contesting government's intent abrogate the privilege. Duwamish Tribe v. Haaland, No. 2:22-CV-633, 2023 WL 8597589, at *4 (W.D. Wash. Dec. 12, 2023).

**E. The Privilege Logs Are Adequate**

The County asserts that its privilege logs are drafted in a manner to enable Sandman "to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Courts assess logs holistically and apply no per se waiver rule. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct., 408 F.3d 1142, 1149 (9th Cir. 2005). The County's entries identify the author, recipients, date, subject, and purpose of each communication, such as "gathering information for legal services" or "seeking legal advice," and provide substantially more than the bare labels rejected in Saud v. State of California, No. 2:14-CV-2536-GEB-AC, 2016 WL 2927591, at *3-*4 (E.D. Cal. May 19, 2016). Where a log falls short, the remedy is supplementation. Burlington, 408 F.3d at 1149; Lofton v. Verizon Wireless (VAW) LLC, 308 F.R.D. 276, 282 (N.D. Cal. 2015). The County has agreed to revise its logs to specifically include the title, description, and subject matter required by sections 7(c)–(e) of this Court's Standing Order, except where that information would itself disclose privileged content.

The County proposes that the Court (1) order the revision of the County and Benchmark's privilege logs to include the title, description, and subject matter required by sections 7(c)(d) and (e) of this Court's Standing Order, except where that information would itself disclose privileged content, and (2) if disputes remain, conduct in camera review of a limited set of exemplar documents. The County also requests leave to submit declarations supporting the factual bases for its privilege assertions.

**IV. CONCLUSION**

Based on the foregoing, the parties respectfully request this Court consider their respective positions outlined above and render its decision to resolve this dispute.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

DATED this 25th day of November, 2026.

ROBERTSON, JOHNSON
MILLER & WILLIAMSON
50 W. Liberty Street, Suite 600
Reno, NV 89501

By: /s/ *G. David Robertson*
G. David Robertson, Esq.
Anthony G. Arger, Esq.
Briana N. Collings, Esq.
*Attorneys for Plaintiff*

DATED: November 25, 2026

**COLANTUONO, HIGHSMITH & WHATLEY, PC**

/s/ Stephanie L. Cooke
MICHAEL G. COLANTUONO
MATTHEW C. SLENTZ
STEPHANIE L. COOKE
Attorneys for Defendants County of San Benito and Arielle Goodspeed

DATED: November 25, 2026

**COLANTUONO, HIGHSMITH & WHATLEY, PC**

/s/ Stephanie L. Cooke
MICHAEL G. COLANTUONO
MATTHEW C. SLENTZ
STEPHANIE L. COOKE
Attorneys for Third Party Benchmark Resources

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **JOINT STATEMENT RE DISCOVERY DISPUTE: DEFENDANT COUNTY OF SAN BENITO'S AND NON-PARTY, BENCHMARK LAND USE GROUP, INC. dba BENCHMARK RESOURCES' PRIVILEGE CLAIMS & LOGS** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 25th day of November, 2026. Pursuant to FRCP 5(B), I further certify that I caused to be delivered electronically via the court's CM/ECF system, a true and correct copy of the foregoing to:

Michael G. Colantuono, Esq.
Matthew C. Slentz, Esq.
Stephanie C. Cooke, Esq.
Colantuono, Highsmith & Whatley, PC
420 Sierra College Drive, Suite 140
Grass Valley, California 95945
mcolantuono@chwlaw.us
mslentz@chwlaw.us
scooke@chwlaw.us
*Attorneys for Defendants*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2026 at Reno, Nevada.

*/s/ Jessica Wright*
An Employee of Robertson, Johnson, Miller & Williamson

**Index of Exhibits**

| No. | Description | Pages |
|---|---|---|
| 1 | Table of Disputed Privilege Log Entries | 19 |
| 2 | Benchmark's Privilege Log | 54 |
| 3 | County's Revised 1/2/26 Privilege Log | 44 |
| 4 | County's Revised 7/20/26 Privilege Log | 28 |
| 5 | Sandman's Proposed Order | 8 |
| 6 | County's and Benchmark's Proposed Order | 4 |

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501